IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

-------------------------------------------------------------------

RICHARD A. LUTHMANN, JR.

                               Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

                             Defendant.

-------------------------------------------------------------------

*Case # 2:26-cv-666-SPC-DNF*

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### Preliminary Statement

1. This lawsuit arises from a murderous injustice cloaked as law enforcement – a 1997 Yonkers slaying that law officers declared "case closed," but was in truth a festering cold case resurrected only to frame an innocent man. On November 11, 1997, Richard Ortiz – a petty criminal and known police informant – was found brutally stabbed under a Yonkers bridge. For years, Ortiz's murder gathered dust unsolved, with no evidence linking John Tortora, Jr. ("Johnny T") to the crime and not a single witness naming him. Yet nearly two decades later, a rogue alliance of dirty cops and federal agents exhumed this cold case and twisted it into a pretext to pursue Tortora "without evidence, relying on fabricated testimony, dubious claims, and a campaign of intimidation". What began as an unsolved local homicide festered into a full-blown frame-up – a malicious prosecution orchestrated by those sworn to uphold justice. In the words of one Yonkers resident, after seeing Tortora dragged through hell on false charges: "The real criminals are the dirty cops and lying feds who put him through hell."

2. This action under the Freedom of Information Act ("FOIA") seeks to rip the mask off that injustice and expose how federal law enforcement turned a cold case into a vendetta against an innocent man, all while stonewalling the public's right to know.

3. Plaintiff Richard A. Luthmann, Jr., is a journalist fighting to unearth the truth of the Ortiz murder saga – a truth that law enforcement buried, manipulated, or outright destroyed while railroading Tortora.

4. In 2015, nearly twenty years after Ortiz's death, federal agents and Yonkers police resurrected the case by leaning on compromised "RAT" informants desperate to save themselves. Carmine Francomano Jr. – a career criminal and government informant – suddenly claimed that "Johnny T" Tortora had ordered Ortiz's killing, a claim concocted under intense federal pressure to close the case and grab headlines. Until Francomano's conveniently timed about-face, Tortora's name had never once appeared in the Ortiz investigation. In fact, Francomano's original story in 1997 blamed someone else entirely – he told police that his own friend, Abdill "Abby" Saez, committed the murder, leading to Saez's arrest.

5. A contemporary prosecutor (Westchester DA Jeanine Pirro, now the U.S. Attorney for the District of Columbia) deemed that case too weak to charge, likely because Francomano himself was an obvious suspect. Years later, after Francomano flipped, federal authorities built their case against Tortora on nothing but these informants' contradictory tales – testimony bought and coerced from men with every motive to lie. Meanwhile, the real evidence of what happened to Ortiz was suppressed or lost.

6. Witnesses long maintained that Ortiz was killed in retribution for informing on an illegal after-hours club run by Francomano's family – a fact corroborated by at least one Yonkers witness. Francomano himself bragged for years about ordering Ortiz's murder, never once mentioning

2

Tortora's name. Yet exculpatory proof of these truths mysteriously vanished from the official record. Both Francomano and Saez quietly pleaded guilty to roles in Ortiz's death as part of their deal to implicate Tortora, but "no court documents…reflecting the guilty pleas" can be found. In other words, the government's own "RATs" – the cooperating liars at the heart of this frame-up – had their incriminating records buried or obscured, denying Tortora the evidence that the informants themselves were the likely killers.

7. By the time Tortora was finally charged, the feds had effectively laundered a baseless accusation into an indictment, shredding the paper trail of doubt and wrongdoing. What remained was a hollow case held together by dirty deals and perjured memories – a fact the federal authorities desperately seek to keep hidden.

8. At the helm of this travesty were not only low-level rogues, but powerful officials who institutionalized the misconduct – and chief among them is James B. Comey. Comey, a Yonkers-born prosecutor-turned-FBI Director, occupied key positions in the Department of Justice throughout the saga – serving as U.S. Attorney for the Southern District of New York and later as Director of the FBI. In these roles, Comey helped entrench a culture of impunity that shielded bad actors rather than exposing them. It was on Comey's watch as FBI Director that the Bureau's New York office undertook the Tortora investigation with guns blazing. Under his leadership, the FBI burned through millions of dollars on a spectacular 2018 raid – complete with helicopters and SWAT teams – only to find "no evidence linking Tortora to the Ortiz murder." Instead, the raid and subsequent prosecution were a "costly spectacle" designed to fabricate a Mafia murder drama where none existed.

9. Comey's FBI prioritized headlines over justice, allowing agents to rely on manufactured evidence and intimidation to pin an unsolved crime on Tortora. Even when the case against

3

Tortora proved threadbare, prosecutors (operating in the legacy of Comey's SDNY) doubled down by tacking on spurious obstruction charges – alleging Tortora destroyed video evidence – in a last-ditch effort to salvage their case. A federal judge went along, permitting the government to treat Ortiz's unproven murder as "relevant conduct" to enhance Tortora's sentence, effectively punishing him for a crime the government could not prove and that Tortora steadfastly denied.

10. Through it all, Comey's DOJ chose to cover for its agents' egregious tactics instead of confronting the truth. The result was an institutional cover-up: from the Yonkers Police Department to the FBI to the U.S. Attorney's Office, every level of law enforcement closed ranks to validate a lie. The misconduct wasn't a bug; it was a feature – woven into the DOJ's fabric by officials like Comey who refused to hold their own accountable. This lawsuit shines a light on that institutional rot, alleging that the Department of Justice, through figures like Comey, knowingly fueled a wrongful prosecution and shielded the perpetrators of a fraud on the public conscience.

11. For years, the Department of Justice has fought to keep this ugly truth buried – defying FOIA's mandate of transparency through delay, obfuscation, and procedural sleight-of-hand. Plaintiff Luthmann, as a reporter and citizen, filed FOIA requests to uncover the federal records that would shed light on the Ortiz/Tortora case. Rather than honor its obligation under 5 U.S.C. § 552, the DOJ responded with a bureaucratic shell game. It hides behind its fragmented structure, insisting that "DOJ" proper cannot respond because relevant records reside in some sub-agency silo – be it the FBI, Main Justice, or a U.S. Attorney's Office. In essence, the Department has argued that its own internal complexity excuses non-compliance, forcing requesters into an endless whack-a-mole hunt through DOJ's "components." Such

gamesmanship makes a mockery of FOIA. Congress mandated a unified duty of disclosure, yet DOJ has effectively delegated its responsibility by saying, "We have no central office – go fish in our maze of bureaus."

12. Even when Luthmann directed requests to the FBI and other components, he was met with stone walls. The FBI issued a blanket *Glomar* refusal – invoking a "longstanding policy" to neither confirm nor deny the existence of records about the very informants and officers at the heart of this scandal. DOJ attorneys doubled down, claiming privacy and secrecy to withhold crucial documents – from witness statements to internal emails – all to prevent embarrassment and accountability. The agency's message to the public has been clear: We will not turn over records that expose our misconduct. This brazen defiance of FOIA's transparency mandate is not just bureaucratic foot-dragging; it is an assault on the principle of open government. By protecting its own secrets instead of the public interest, the DOJ has placed itself above the law, defying the very congressional will that created FOIA to prevent such agency abuse.

13. Through this lawsuit, Plaintiff seeks more than just documents – he seeks a judicial reckoning that will vindicate the rule of law over agency stonewalling. The Freedom of Information Act is not a suggestion; it is a statutory command that "any person" has a right to agency records, subject only to narrow exemptions. The Department of Justice does not get to write itself out of this law. Indeed, the Supreme Court has recently re-emphasized the constitutional limits on agency overreach: under the Major Questions Doctrine, agencies must point to "clear congressional authorization" for any maneuver that would alter the balance of powers or evade legal mandates. *West Virginia v. EPA,* 597 U.S. 697 (2022), taught that an agency cannot stretch or reinvent statutory text to escape accountability; here, DOJ's self-serving FOIA evasions fare no better. There is no statute or authorization that permits DOJ to hide information about

potential crimes and malfeasance by fragmenting FOIA obligations among sub-agencies – to the contrary, FOIA's text and purpose demand a unified compliance. If FOIA means anything, it means that the nation's top law enforcement body cannot shroud its wrongdoing in bureaucratic fog.

14. Plaintiff Luthmann, standing in the shoes of the press and the public, asks this Court to enforce that bedrock principle. He invokes the judiciary's power to say "enough" – to compel the DOJ to obey the law and release the records at issue, and in doing so to remind the Department that no agency, however powerful, is above Congress's transparency mandates. This case is about more than one journalist's request: it is a showdown over whether DOJ can defy the FOIA with impunity, or whether the courts will uphold the public's right to know and demand accountability for an injustice that has festered for far too long. The law and the Constitution favor the latter. The truth – and the soul of the Freedom of Information Act – will be vindicated in this Court.

### Jurisdiction and Venue

15. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) (FOIA) and 28 U.S.C. § 1331 (federal question jurisdiction). The Court is authorized to grant declaratory and injunctive relief under 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. § 2201, and 28 U.S.C. § 2202.

16. Venue is proper in the Middle District of Florida, Fort Myers Division, under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e). Plaintiff resides in Naples, Florida (Collier County), which lies within the Fort Myers Division of this District. Thus, venue is proper in this Division because Plaintiff's place of residence is in this District and Division.

17. Because DOJ has failed to comply with FOIA within the time limits set by law, Plaintiff is deemed to have constructively exhausted all administrative remedies pursuant to 5 U.S.C. §

552(a)(6)(C)(i). Additionally, Plaintiff has actually exhausted all applicable administrative remedies by submitting FOIA requests to the relevant DOJ component(s), receiving no satisfactory response, and pursuing an administrative appeal to DOJ's Office of Information Policy ("OIP"), which has now denied the appeal or otherwise failed to provide the requested relief. Therefore, all conditions precedent to the suit have been fulfilled.

## Parties

18. Plaintiff Richard A. Luthmann, Jr., is a citizen of the State of Florida and an investigative journalist who reports on matters involving public corruption, law enforcement accountability, and the administration of criminal justice. Through his work as a reporter and commentator, Plaintiff regularly investigates allegations of governmental misconduct and seeks to inform the public about the actions of government officials and institutions. Plaintiff has a professional and journalistic interest in uncovering the truth behind the investigation and prosecution arising from the 1997 murder of Richard Ortiz, including the roles played by federal and local law enforcement officials and cooperating witnesses. Plaintiff further seeks to shed light on allegations of investigative misconduct, abuse of prosecutorial authority, and the potential misuse of federal investigative resources connected to that case. The records sought through Plaintiff's Freedom of Information Act requests are therefore directly related to matters of substantial public concern and are sought for the purpose of informing the public about the operations and activities of the United States Department of Justice and its components. Plaintiff requested the records at issue for news-gathering purposes to inform the public. Plaintiff resides in Naples, Florida (Collier County), within this Court's jurisdiction.

19. Defendant United States Department of Justice ("DOJ") is a Department of the Executive Branch of the U.S. Government and is an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

DOJ is headquartered in Washington, D.C., and has possession or control of the records Plaintiff seeks.

20. DOJ includes multiple subcomponents, such as the Federal Bureau of Investigation ("FBI") and the Executive Office for United States Attorneys ("EOUSA"), among others, that may hold responsive records. DOJ and its components are subject to FOIA.

21. At all relevant times, DOJ (including its components) was responsible for responding to Plaintiff's FOIA requests and complying with FOIA's requirements.

**Factual Background**

**The 1997 Murder of Richard Ortiz and Aftermath**

22. On November 11, 1997, Richard Ortiz – a 29-year-old Yonkers resident known to be a police informant and petty criminal – was found fatally stabbed under a bridge near The Mill Tavern on Lockwood Avenue in Yonkers, New York. Ortiz had multiple stab wounds to his abdomen, and investigators learned Ortiz had made enemies in the community due to his informant activities. The Yonkers Police Department (YPD) conducted an extensive investigation into Ortiz's murder, identifying various local suspects and motives.

23. Notably, no evidence at the time linked John "Johnny T" Tortora, Jr. to the crime, and Tortora's name did not appear in any police reports from 1997 through 2015. The Ortiz case went cold for nearly two decades with no charges filed.

24. Tortora was a well-liked local pawnbroker and community figure in Yonkers. Despite his lack of any apparent connection to the Ortiz murder, federal authorities later developed a keen interest in Tortora.

25. Years prior, Tortora had been on the radar of federal prosecutors for unrelated minor offenses – for example, former SDNY U.S. Attorney James Comey once reportedly "tried to jam Johnny

T up" over a trivial stolen goods matter (valued at under $1,000). Local lore holds that law enforcement figures such as Comey harbored a vendetta against Tortora, perceiving him as an Italian-American folk-hero type whom "everyone on the street loved."

26. This backdrop set the stage for what would later be seen as a retaliatory push to implicate Tortora in the Ortiz murder despite scant evidence. Comey's entire career in criminal justice was built upon lies, dishonesty, bias, and vendetta. Comey hated Tortora because he was a well-liked Italian-American businessman.

27. In 2015, nearly eighteen years after Ortiz's death, the dormant case was dramatically resurrected. Carmine Francomano, Jr. – a known government informant with ties to organized crime – was arrested on federal charges unrelated to Ortiz. Under pressure to cooperate, Francomano for the first time implicated John Tortora as the person who had ordered Ortiz's murder.

28. This was a sudden shift; for almost two decades, Francomano had never mentioned Tortora's name in connection with the killing. In fact, immediately after the 1997 murder, Francomano had identified his friend Abdill "Abby" Saez as the killer, and local police even arrested Saez at that time.

29. The Westchester County District Attorney (then Jeanine Pirro, the current U.S. Attorney for the District of Columbia) declined to prosecute back then, apparently finding the case too weak and Francomano's credibility suspect.

30. Francomano's belated story in 2015 conveniently fit a federal narrative: he claimed Tortora ordered Ortiz's murder because Ortiz had crossed "mob" interests – allegedly by stealing from illegal gambling operations ("Joker Poker" machines) and by informing authorities about an after-hours club run by Francomano's family. This narrative portrayed Tortora as a local crime

9

boss ordering a hit on an informant. This storyline would justify turning a cold murder case into a federal organized crime prosecution.

31. However, this tale lacked any independent corroboration. It rested almost entirely on Francomano's word – a man with an apparent motive to shift blame – and on the word of Abdill Saez, who also purportedly agreed to cooperate.

32. Both Francomano and Saez pleaded guilty to offenses connected to Ortiz's killing (in exchange for leniency), yet to this day, no court records of those plea deals have been unearthed, raising questions about what arrangements were made with these witnesses behind closed doors. Their credibility is deeply in doubt, given their self-interest and prior inconsistent stories. Additionally, Comey's involvement with Tortora makes this case one of heightened public interest.

33. Detective John T. Geiss, a Yonkers Police cold-case detective, partnered with federal agents to build the renewed case against Tortora starting around 2015. Geiss had a checkered reputation: he was known in the community as a "dirty cop" who allegedly coerced witnesses and even drank on duty.

34. Geiss became the architect of the new narrative implicating Tortora, despite the absence of fresh evidence. Under Geiss's direction, witness statements were "reconstructed" to align with the federal theory, and longstanding gaps in proof were papered over with speculation and coercion. Locals have alleged that Geiss harbored personal grudges and was more motivated by career advancement than by truth.

35. The partnership of Geiss, the FBI, and federal prosecutors transformed a cold case into a cause célèbre – one that some observers believe was aimed less at achieving justice for Ortiz and more at settling scores with Tortora.

36. In early 2018, the FBI – working in tandem with the U.S. Attorney's Office for the Southern District of New York – launched a high-profile raid on Tortora's business (Yonkers Pawnbrokers on Saw Mill River Road) as part of the Ortiz murder probe. In a scene seemingly designed for headlines, heavily armed agents and helicopters descended on the property. The operation cost millions of taxpayer dollars and was ostensibly justified by allegations that Tortora was involved in illegal gambling (the "Joker Poker" video machines) and that evidence related to Ortiz's murder might be found.

37. The raid uncovered no evidence tying Tortora to the 1997 Ortiz murder. The "Joker Poker" machines turned out to be ordinary entertainment devices; the gambling allegations appear to have been a pretext to invoke federal jurisdiction and pour resources into the case. Critics later noted that such an overwhelming show of force was utterly disproportionate – one local commentator quipped that the FBI could have surveilled the pawnshop on Google Maps for free instead of deploying helicopters.

38. After failing to find proof of Tortora's role in the murder, federal prosecutors pivoted to an "obstruction of justice" theory to salvage their case. They accused Tortora of destroying surveillance footage subpoenaed in the investigation. Tortora maintained – and evidence showed – that any missing footage was due to technical problems, not deliberate spoliation. Nevertheless, prosecutors charged Tortora with obstruction and related offenses, effectively punishing him for a murder that they could not directly pin on him.

39. At trial in the Southern District of New York (before Judge Sidney Stein), the government went so far as to introduce the unproven Ortiz murder as "relevant conduct" to enhance Tortora's sentence on the obstruction count. Tortora's counsel vehemently challenged this move, even

demanding a *Fatico* hearing to force the government to prove Tortora's supposed involvement in the murder.

40. The U.S. Attorney's Office ultimately backed down, unable to offer any evidence tying Tortora to Ortiz's death. Nonetheless, the mere insinuation of Tortora's involvement in the murder influenced the proceedings. In 2019, Tortora was sentenced to four years in federal prison on the obstruction-related charges, a sentence far harsher than what the obstruction alone might have merited.

41. Tortora's enhanced harms are palpable. He endured nearly two years in pretrial detention under harsh conditions (including a six-day power blackout at Brooklyn's MDC jail in winter 2019). Tortora's family, including a daughter who depends on him for care, suffered greatly from his absence. His pawnshop business was devastated by the raids and negative publicity.

42. The public interest in this case is extraordinarily high. To many Yonkers residents and observers of federal law enforcement, Tortora's prosecution appeared to be a vendetta and a misuse of government power rather than a good-faith pursuit of justice. Community members rallied to Tortora's support, calling him "a good man" wronged by "dirty cops and lying feds," including James Comey.

43. The case exemplifies concerns about prosecutorial overreach and waste of taxpayer funds. It has been reported that the FBI and DOJ expended massive resources (including millions of dollars and countless man-hours) in an effort to convict Tortora, even as the core murder allegation lacked evidence.

44. Critics argue that the prosecution was driven by a need to save face and justify the expenditure, rather than by the merits of the evidence. In the wake of Tortora's conviction, there have been public calls for accountability and independent review of the DOJ and FBI's handling of the

Ortiz murder investigation. Community members even urged the Trump administration to scrutinize the matter as an example of law enforcement run amok.

45. Against this backdrop, Plaintiff Luthmann, as a journalist, submitted FOIA requests to uncover the truth about how federal and local authorities handled the Ortiz murder investigation and Tortora prosecution. The records Plaintiff seeks are likely to shed light on governmental misconduct, abuse of power, and misallocation of resources in this controversial case.

46. Disclosure of these records will serve FOIA's core purpose of informing citizens about "what their government is up to," especially where, as here, the information may document government wrongdoing or incompetence. When government agencies are alleged to have acted improperly or vindictively, the public interest in disclosure is at its zenith.

47. Plaintiff's FOIA requests go to the heart of significant public concerns: whether federal law enforcement (including DOJ leadership and FBI agents) manipulated a cold case to target an individual without evidence, and whether the rights of the accused were sacrificed for headlines.

48. Transparency is essential to maintain public confidence, and FOIA mandates that agencies release non-exempt records so that the public can evaluate the conduct of its officials.

49. Tortora does not stand in the way of sunlight. Quite the opposite, Tortora has executed a waiver in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b). See Declaration of John Tortora, Jr., attached herewith as **Exhibit A**.

50. **Exhibit A** is the sworn Declaration of John Tortora, Jr., executed under penalty of perjury and notarized, in which Tortora voluntarily and expressly waives all Privacy Act protections applicable to records concerning him maintained by the United States Department of Justice and any of its components, including the Federal Bureau of Investigation, the Executive Office

for United States Attorneys, and any United States Attorney's Office. The declaration authorizes disclosure of all investigative, prosecutorial, and related records referencing Tortora to Plaintiff Richard A. Luthmann in connection with Plaintiff's Freedom of Information Act requests and this civil action. The declaration further confirms that the authorization is voluntary, comprehensive, and satisfies any legal requirement for a Privacy Act waiver or proof of identity, thereby eliminating any personal privacy barrier to the disclosure of responsive records.

51. Any reliance by Defendant on Privacy Act restrictions or FOIA privacy exemptions— including 5 U.S.C. § 552(b)(6) or § 552(b)(7)(C)—is foreclosed by the sworn Privacy Act waiver executed by John Tortora, Jr. and attached hereto as **Exhibit A**. In that declaration, Tortora expressly authorizes the United States Department of Justice and all of its components to disclose any records concerning him, including investigative files, communications, witness statements, and prosecutorial materials, to Plaintiff Richard A. Luthmann. The declaration further waives any Privacy Act protections under 5 U.S.C. § 552a and authorizes disclosure without further notice to Tortora. Because the subject of the records has provided a knowing and voluntary written consent for disclosure, the Department of Justice cannot invoke privacy-based exemptions to withhold responsive records concerning Tortora. Courts routinely hold that a valid Privacy Act waiver removes any cognizable privacy interest in such records and requires disclosure of non-exempt materials. Accordingly, the waiver eliminates any legitimate basis for Defendant to refuse confirmation, deny the existence of records, or withhold responsive documents relating to Tortora under FOIA.

## Plaintiff's FOIA Requests and Exhaustion of Remedies

52. Plaintiff made two (2) FOIA requests to the DOJ. One was made to the DOJ through its sub-agency, the FBI. A second was made to the DOJ through the DOJ Office of Information Policy (OIP).

53. On or about December 3, 2024, Plaintiff submitted FOIA requests to the DOJ, specifically directed to the FBI. See the attached **Exhibit B**.

54. **Exhibit B** is Plaintiff Richard A. Luthmann's written Freedom of Information Act request submitted to the Federal Bureau of Investigation on December 3, 2024, pursuant to 5 U.S.C. § 552. The request reasonably described the records sought by specifically identifying the individuals and investigative subject matter involved, including John Tortora, Jr., Yonkers Police Detective John T. Geiss, Carmine Francomano, Abdill Saez, and Richard Ortiz, and by requesting all records relating to investigations, interviews, field notes, reports, and internal communications concerning the 1997 murder of Richard Ortiz in Yonkers, New York. Plaintiff further directed the FBI to search the Central Records System indices for responsive materials covering the period from January 1, 1997, to the present, requested disclosure of all reasonably segregable non-exempt portions of responsive records, and sought explanations for any redactions or exemptions asserted. Plaintiff also identified himself as a journalist seeking the records for news-gathering purposes under the Press Clause of the First Amendment and the Freedom of Information Act. Accordingly, the request plainly satisfied FOIA's requirement that records be "reasonably described" and triggered the agency's statutory duty to conduct a good-faith search for responsive records.

55. The FBI cannot avoid its statutory disclosure obligations by refusing to search for or acknowledge responsive records in response to Plaintiff's FOIA request. As reflected in

**Exhibit B**, Plaintiff specifically identified the relevant individuals, subject matter, investigative context, and time frame for the requested materials, thereby providing more than sufficient detail to enable the FBI to locate responsive records within its Central Records System and investigative files. Courts consistently hold that a FOIA request satisfies the "reasonable description" requirement when it identifies specific persons, events, and time periods, as Plaintiff did here. Because the request directly concerns a widely reported federal investigation into the 1997 murder of Richard Ortiz and related investigative activities involving federal law enforcement personnel and cooperating witnesses, the FBI cannot plausibly claim that it lacks the ability to identify responsive records. Accordingly, any refusal to conduct an adequate search, any "no records" response, or any attempt to issue a categorical Glomar response constitutes an unlawful withholding of agency records under 5 U.S.C. § 552(a)(3)(A) and (a)(4)(B).

56. On or about December 3, 2024, Plaintiff made a second request to the DOJ through the DOJ OIP. See the attached **Exhibit C**.

57. **Exhibit C** is Plaintiff Richard A. Luthmann's Freedom of Information Act request directed to the Office of Information Policy of the United States Department of Justice and dated December 3, 2024. In that request, Plaintiff sought disclosure of all records, files, investigative reports, communications, and related materials in the possession of the Department of Justice concerning John Tortora, Jr., Detective John T. Geiss of the Yonkers Police Department, Carmine Francomano, Abdill Saez, and Richard Ortiz, including records related to the 1997 murder of Richard Ortiz in Yonkers, New York. The request specifically directed the Department to search its indices in the Central Records System for responsive materials covering the period from January 1, 1997, to the present and requested that any reasonably

segregable non-exempt portions of responsive records be produced with explanations for any claimed redactions or exemptions. Plaintiff further identified himself as a journalist and member of the National Writers Union seeking the records under the Freedom of Information Act and the Press Clause of the First Amendment for the purpose of informing the public about matters of significant governmental interest.

58. Plaintiff's request to the Office of Information Policy constituted a proper agency-level FOIA request directed to the Department of Justice itself, rather than to any particular internal component. The Freedom of Information Act imposes disclosure obligations on each federal "agency," not on internal subdivisions of those agencies. See 5 U.S.C. § 552(a)(3)(A), (f)(1). By directing the request to the Office of Information Policy—the Department's central FOIA policy and oversight office—Plaintiff reasonably sought records maintained anywhere within the Department of Justice. The request identified the individuals, investigative subject matter, and time frame of the records sought and specifically requested that DOJ search its indices for responsive materials dating from January 1, 1997, to the present. Accordingly, the Department of Justice received a valid FOIA request for records within its custody or control, and it cannot avoid its statutory duties by requiring Plaintiff to identify or separately petition individual DOJ subcomponents such as the FBI or particular United States Attorney's Offices.

**FOIA Request to DOJ via FBI**

59. Plaintiff's FOIA request to the FBI reasonably described the records sought with specificity, identifying the key individuals and the context (the Ortiz murder case). Plaintiff requested both paper and electronic records, including but not limited to FBI reports, emails, memos, transcripts, photos, and any other documentation in the DOJ's possession on these matters. Plaintiff also requested a public-interest fee waiver, explaining that the information sought

would significantly contribute to the public's understanding of government operations and potential misconduct (as a journalist, Plaintiff intends to publish the findings).

60. DOJ's Response – or Lack Thereof: The DOJ, through its component, the FBI, acknowledged receipt of Plaintiff's FOIA request. See the attached **Exhibit D**.

61. **Exhibit D** is the Federal Bureau of Investigation's written response to Plaintiff Richard A. Luthmann's Freedom of Information Act request concerning records related to John Tortora, Jr., Detective John T. Geiss, Carmine Francomano, Abdill Saez, and the 1997 murder of Richard Ortiz. In that response, dated December 23, 2024, the FBI represented that it conducted a search of the Central Records System indices but claimed it was unable to identify records responsive to Plaintiff's request and therefore closed the request. The Bureau further asserted that certain potentially responsive records had either been destroyed pursuant to records retention schedules, transferred to the National Archives and Records Administration, or could not be located despite additional searches. The FBI also invoked FOIA privacy exemptions and its policy of refusing to confirm or deny the existence of records concerning third parties, and it advised Plaintiff of his right to pursue an administrative appeal through the Department of Justice Office of Information Policy.

62. The FBI failed to timely produce the requested records or adequately justify any withholdings within the statutory time frame.

63. By law, an agency must determine within 20 business days (plus a possible 10-day extension in unusual circumstances) whether to comply with a FOIA request, and promptly notify the requester of its decision, 5 U.S.C. § 552(a)(6)(A)–(B).

64. The FBI did not issue a final determination within the statutory time limits. Instead, DOJ (via FBI) effectively denied Plaintiff's request by either refusing to conduct a comprehensive search across DOJ components or by withholding all responsive records under blanket claims.

65. The FBI informed Plaintiff that any search for records would be limited to the FBI's own files and suggested that Plaintiff should direct separate requests to other DOJ components (such as EOUSA for any prosecutorial records) if those records were sought.

66. To the extent the FBI provided any substantive response, it either claimed that no records were located (which is not credible given the public court filings and news reports confirming an FBI investigation) or it invoked FOIA exemptions broadly without segregating releasable portions.

67. For example, the FBI's response cited privacy concerns under FOIA Exemptions 6 and 7(C) to refuse confirmation of records about third parties like Francomano or Geiss, despite the strong public interest in their official conduct and the availability of Privacy Act waivers (indeed, Plaintiff provides a Privacy Act consent from Tortora to facilitate release of Tortora's records).

68. Administrative Appeal: Plaintiff timely appealed the FBI's effective denial of his request by submitting an administrative appeal to DOJ's Office of Information Policy (OIP) as permitted by 28 C.F.R. § 16.8. See the attached **Exhibit E.**

69. **Exhibit E** is Plaintiff Richard A. Luthmann's administrative appeal submitted to the Office of Information Policy of the United States Department of Justice challenging the Federal Bureau of Investigation's response to Plaintiff's Freedom of Information Act request concerning records related to John Tortora, Jr., Detective John T. Geiss, Carmine Francomano, Abdill Saez, and the 1997 murder of Richard Ortiz. In the appeal, Plaintiff

argued that the FBI's response was legally insufficient because the agency failed to conduct an adequate search and improperly refused to confirm or deny the existence of responsive records despite evidence that the FBI's New York Field Office possessed such materials. The appeal further asserted that DOJ's procedural practices limiting FOIA obligations through technical receipt or routing requirements violate the plain language of FOIA and improperly expand agency authority without congressional authorization, invoking the Major Questions Doctrine recognized in *West Virginia v. EPA*, 597 U.S. 697 (2022). Plaintiff therefore requested that the Department of Justice reverse the FBI's determination and compel a lawful search and disclosure of responsive records.

70. In the appeal, Plaintiff challenged the adequacy of the FBI's search and the improper refusal to search or produce records from other DOJ components (like the SDNY U.S. Attorney's Office) under the umbrella of Plaintiff's DOJ-wide request.

71. Plaintiff also challenged the invocation of any exemptions, arguing that even if some material is exempt, DOJ must segregate and release all non-exempt portions.

72. Plaintiff's appeal emphasized the overriding public interest in disclosure: the records involve possible government misconduct, and the subject individuals (Tortora, Francomano, Geiss, etc.) are either public officials or participants in a high-profile case, diminishing any legitimate privacy expectation.

73. OIP (on behalf of DOJ) confirmed receipt of Plaintiff's appeal. See the attached **Exhibit F**.

74. **Exhibit F** is correspondence from the Office of Information Policy of the United States Department of Justice acknowledging receipt of Plaintiff Richard A. Luthmann's administrative appeal from the Federal Bureau of Investigation's response to his Freedom

20

of Information Act request concerning records related to John Tortora, Jr., Detective John

T. Geiss, Carmine Francomano, Abdill Saez, and the 1997 murder of Richard Ortiz. In that

letter, dated March 19, 2025, the Office of Information Policy confirmed that it had

received Plaintiff's appeal from the FBI's action on Request No. 1655259-000 and

assigned the appeal number **A-2025-01094**, advising Plaintiff that the appeal would be

reviewed in due course and that the Office would notify him upon reaching a decision. The

letter further informed Plaintiff that he could contact the Office of Information Policy

regarding the status of the appeal or monitor the appeal through the Department's FOIA

STAR portal.

75. OIP (on behalf of DOJ) denied Plaintiff's appeal, upholding the FBI's handling of the

request. See the attached **Exhibit G**.

76. **Exhibit G** is the final administrative appeal decision issued by the Office of Information

Policy of the United States Department of Justice on September 12, 2025, concerning

Plaintiff Richard A. Luthmann's Freedom of Information Act appeal from the Federal

Bureau of Investigation's response to Request No. 1655259-000. In that decision, the

Office of Information Policy affirmed, on partly modified grounds, the FBI's handling of

Plaintiff's request for records relating to John Tortora, Jr., Detective John T. Geiss, Carmine

Francomano, Abdill Saez, and Richard Ortiz. The decision upheld the FBI's refusal to

confirm or deny the existence of records concerning several third parties under FOIA

privacy exemptions and determined that the FBI had conducted an adequate search with

respect to records relating to Richard Ortiz. The Office further advised Plaintiff that he had

the right to seek judicial review in federal district court pursuant to 5 U.S.C. § 552(a)(4)(B),

thereby constituting the Department of Justice's final agency action on Plaintiff's administrative appeal.

77. OIP's response took the position that DOJ components are only obligated to search their own records and that Plaintiff's FOIA request, to the extent it sought records across multiple DOJ sub-agencies, was beyond the scope of what DOJ's FOIA process would accommodate.

78. OIP asserted that Plaintiff must submit separate FOIA requests to each relevant DOJ component (e.g., one to the FBI, one to EOUSA for any U.S. Attorney records, etc.), effectively refusing to process the request as one encompassing all DOJ records on the specified subject matter.

79. OIP's letter also reiterated the FBI's reliance on certain FOIA exemptions (such as Ex. 6/7(C) for personal privacy and Ex. 7(A) or 7(E) if any ongoing proceedings or techniques were involved), without adequately demonstrating how those exemptions apply to each withheld record or considering the compelling public interest in disclosure.

80. OIP's appeal denial represents the final agency action on Plaintiff's FOIA request. Plaintiff has now exhausted all administrative remedies available under FOIA with respect to this request.

**FOIA Request to DOJ via OIP**

81. Plaintiff's FOIA request to the DOJ OIP reasonably described the records sought with specificity, identifying the key individuals and the context (the Ortiz murder case). Plaintiff requested both paper and electronic records, including but not limited to DOJ reports, emails, memos, transcripts, photos, and any other documentation in the DOJ's possession on these matters. Plaintiff also requested a public-interest fee waiver, explaining that the

information sought would significantly contribute to the public's understanding of government operations and potential misconduct (as a journalist, Plaintiff intends to publish the findings).

82. DOJ's Response – or Lack Thereof: The DOJ, through its component, the OIP, denied Plaintiff's FOIA request. See **Exhibit H**.

83. **Exhibit H** is correspondence from the Office of Information Policy of the United States Department of Justice dated December 17, 2024, responding to Plaintiff Richard A. Luthmann's Freedom of Information Act request seeking records relating to John Tortora, Jr., Detective John T. Geiss, Carmine Francomano, Abdill Saez, and Richard Ortiz. In that letter, the Office of Information Policy acknowledged receipt of Plaintiff's request and assigned it Request No. FOIA-2025-01213, but advised that the Office of Information Policy and the senior leadership offices whose records it maintains do not typically maintain records concerning individuals and therefore would not possess the types of investigative records requested. The letter further stated that the Department of Justice administers FOIA through a decentralized system in which individual components process requests for their own records, and it instructed Plaintiff to direct his request to other components that might maintain responsive materials. The correspondence also advised Plaintiff of his right to submit an administrative appeal within ninety days of the determination.

84. However, the OIP failed to timely produce the requested records or adequately justify any withholdings within the statutory time frame.

85. By law, an agency must determine within 20 business days (plus a possible 10-day extension in unusual circumstances) whether to comply with a FOIA request, and promptly notify the requester of its decision, 5 U.S.C. § 552(a)(6)(A)–(B).

86. The OIP did not issue a final determination within the statutory time limits. Instead, DOJ (via OIP) effectively denied Plaintiff's request by either refusing to conduct a comprehensive search across DOJ components or by withholding all responsive records under blanket claims.

87. The OIP informed Plaintiff that any search for records would be limited to the OIP's own files and suggested that Plaintiff should direct separate requests to other DOJ components (such as EOUSA for any prosecutorial records) if those records were sought.

88. To the extent the OIP provided any substantive response, it either claimed that no records were located (which is not credible given the public court filings and news reports confirming a DOJ investigation) or it invoked FOIA exemptions broadly without segregating releasable portions.

89. For example, the OIP's response cited privacy concerns under FOIA Exemptions 6 and 7(C) to refuse confirmation of records about third parties like Francomano or Geiss, despite the strong public interest in their official conduct and the availability of Privacy Act waivers (indeed, Plaintiff provided a Privacy Act consent from Tortora to facilitate release of Tortora's records).

90. Administrative Appeal: Plaintiff timely appealed the OIP's effective denial of his request by submitting an administrative appeal to DOJ's Office of Information Policy (OIP), as permitted by 28 C.F.R. § 16.8. See **Exhibit I**.

91. **Exhibit I** is Plaintiff Richard A. Luthmann's administrative appeal submitted to the Office of Information Policy of the United States Department of Justice, challenging the agency's response to his Freedom of Information Act request assigned Request No. FOIA-2025-01213. In that appeal, Plaintiff argued that the Department of Justice improperly refused to process his request on the basis of its internal "decentralized" FOIA structure and incorrectly required Plaintiff to direct his request to individual DOJ components rather than the Department itself. Plaintiff asserted that this position conflicts with the plain language of FOIA, which imposes disclosure obligations on each federal "agency," including the Department of Justice, and contended that DOJ's reliance on internal routing requirements constitutes an unlawful expansion of agency authority without congressional authorization. The appeal further invoked the Supreme Court's decision in *West Virginia v. EPA*, 597 U.S. 697 (2022), arguing that the DOJ's self-created procedural barriers to FOIA disclosure violate the Major Questions Doctrine and improperly allow the agency to evade its statutory transparency obligations.

92. In the appeal, Plaintiff challenged the adequacy of the OIP's search and the improper refusal to search or produce records from other DOJ components (like the SDNY U.S. Attorney's Office) under the umbrella of Plaintiff's DOJ-wide request.

93. Plaintiff also challenged the invocation of any exemptions, arguing that even if some material is exempt, DOJ must segregate and release all non-exempt portions.

94. Plaintiff's appeal emphasized the overriding public interest in disclosure: the records involve possible government misconduct, and the subject individuals (Tortora, Francomano, Geiss, etc.) are either public officials or participants in a high-profile case, diminishing any legitimate privacy expectation.

25

95. OIP (on behalf of DOJ) confirmed receipt of Plaintiff's appeal. See the attached **Exhibit J**.

96.  **Exhibit J** is correspondence from the Office of Information Policy ("OIP") of the United States Department of Justice dated December 20, 2024, acknowledging receipt of Plaintiff Richard A. Luthmann's administrative appeal concerning the Department's handling of his Freedom of Information Act request assigned Request No. FOIA-2025-01213. In that letter, OIP confirmed that Plaintiff's appeal had been received on December 20, 2024, and assigned Appeal No. **A-2025-00574**, advising Plaintiff that the appeal would be processed in the order received pursuant to OIP's standard procedures. The correspondence further instructed Plaintiff to reference the assigned appeal number in future communications and advised that OIP would notify him when a determination on the appeal had been made. The letter also provided contact information for inquiries regarding the status of the appeal and noted that Plaintiff could monitor the appeal through the Department's FOIA STAR system.

97. OIP (on behalf of DOJ) denied Plaintiff's appeal, upholding the OIP's handling of its own request. See the attached **Exhibit K**.

98. **Exhibit K** is the final administrative appeal decision issued by the Office of Information Policy of the United States Department of Justice on April 25, 2025, concerning Plaintiff Richard A. Luthmann's appeal from the Office of Information Policy's Initial Request Staff's response to Freedom of Information Act Request No. FOIA-2025-01213. In that decision, the Office of Information Policy affirmed the Initial Request Staff's determination that it does not maintain records responsive to Plaintiff's request for materials relating to John Tortora, Jr., Detective John T. Geiss, Carmine Francomano, Abdill Saez, and the 1997 murder investigation of Richard Ortiz. The decision further advised Plaintiff that, based on the nature of the records sought, responsive materials—if

they exist—would more likely be maintained by other Department of Justice components, including the Executive Office for United States Attorneys or the Federal Bureau of Investigation, and therefore suggested that Plaintiff submit requests directly to those entities. The correspondence also notified Plaintiff of his right to seek judicial review in federal district court pursuant to 5 U.S.C. § 552(a)(4)(B), thereby constituting final agency action on Plaintiff's administrative appeal.

99. OIP's response took the position that DOJ components are only obligated to search their own records and that Plaintiff's FOIA request, to the extent it sought records across multiple DOJ sub-agencies, was beyond the scope of what DOJ's FOIA process would accommodate.

100.    OIP asserted that Plaintiff must submit separate FOIA requests to each relevant DOJ component (e.g., one to the FBI, one to EOUSA for any U.S. Attorney records, etc.), effectively refusing to process the request as one encompassing all DOJ records on the specified subject matter.

101.    OIP's appeal denial letter also reiterated the OIP's reliance on certain FOIA exemptions (such as Ex. 6/7(C) for personal privacy and Ex. 7(A) or 7(E) if any ongoing proceedings or techniques were involved), without adequately demonstrating how those exemptions apply to each withheld record or considering the compelling public interest in disclosure.

102.    OIP's appeal denial represents the final agency action on Plaintiff's FOIA request. Plaintiff has now exhausted all administrative remedies available under FOIA with respect to this request.

**DOJ's Failure to Produce Records**

103.    As of the filing of this Complaint, DOJ has not produced the requested records to Plaintiff, nor has it identified any specific valid FOIA exemptions that would justify withholding all such records in full.

104.    DOJ has not refuted that it possesses records responsive to Plaintiff's request; indeed, given the FBI and DOJ's well-publicized involvement in the Ortiz/Tortora investigation and the federal prosecution of Tortora, it is incontrovertible that responsive records exist (in FBI case files, DOJ prosecutors' files, etc.).

105.    Additionally, a letter from the New York City Police Department, a law-enforcement partner in the Ortiz investigation, confirms that the DOJ and several of its sub-agency components have possession of responsive materials. See the attached **Exhibit L**.

106.    **Exhibit L** is correspondence from the Legal Bureau of the New York City Police Department dated January 7, 2025, responding to Plaintiff Richard A. Luthmann's request submitted under the New York Freedom of Information Law concerning records related to the 1997 murder of Richard Ortiz. In that letter, the NYPD Legal Bureau advised that, with respect to certain requested records, the appropriate entities likely to possess responsive materials include the Federal Bureau of Investigation's New York Field Office, the Commissioner of the City of Yonkers Police Department, and the United States Attorney's Office for the Southern District of New York. The letter further explained that certain responsive materials were subject to redactions pursuant to privacy and safety exemptions under New York law and provided instructions regarding payment procedures and the administrative appeal process. This correspondence constitutes independent confirmation by a law enforcement agency that federal authorities—including the FBI and the U.S.

28

Attorney's Office—likely possess records relating to the investigation referenced in Plaintiff's FOIA requests.

107.    DOJ's refusal to conduct an adequate search and release these records is unlawful. FOIA requires federal agencies to make records promptly available upon request (unless lawfully exempt), and it places the burden on the agency to justify any withholdings.

108.    Defendant's attempt to evade its disclosure obligations by requiring requesters to direct FOIA requests to individual "components" or "sub-agencies" of the Department of Justice is contrary to the plain language of the Freedom of Information Act and exceeds the authority granted by Congress. FOIA imposes a disclosure duty on each federal "agency," and the Department of Justice is itself an agency within the meaning of the statute. 5 U.S.C. § 552(f)(1). Nothing in FOIA authorizes DOJ to fragment its statutory obligations by requiring requesters to identify internal subdivisions such as the FBI, EOUSA, or particular United States Attorney's Offices before a request will be honored. By imposing such procedural barriers, DOJ has effectively rewritten FOIA to narrow the scope of the statute enacted by Congress. Under the principles articulated by the Supreme Court in *West Virginia v. EPA*, administrative agencies may not claim powers of major economic or political significance without clear congressional authorization. 597 U.S. 697, 720–24 (2022). Here, DOJ's sub-agency routing regime arrogates to the Department the unilateral power to define when a FOIA request is "properly" received and to avoid the statute's mandatory disclosure obligations through internal bureaucratic structure. Such a scheme constitutes an impermissible expansion of agency authority and a form of agency self-delegation that lacks any basis in the statutory text. Because Congress directed that "each agency" must produce records upon a proper request, DOJ's attempt to impose

29

additional non-statutory requirements through internal component routing rules is unlawful and cannot justify the withholding of responsive records.

109.     The Department of Justice's attempt to condition its FOIA obligations on internal "component" routing rules also raises serious separation-of-powers concerns. Congress enacted FOIA as a broad transparency statute designed to ensure public access to government records and to prevent agencies from shielding their conduct from scrutiny. See 5 U.S.C. § 552(a)(3)(A). By requiring requesters to identify and submit requests to individual DOJ subcomponents before any duty to search arises, the Department has effectively created a procedural gatekeeping regime not authorized by Congress. Under the Supreme Court's Major Questions Doctrine, courts must reject agency assertions of power that alter statutory rights or obligations in matters of significant political or institutional consequence absent clear congressional authorization. 597 U.S. at 720–24. FOIA's guarantee of public access to federal records is one of the central transparency mandates enacted by Congress. Allowing DOJ to redefine when a request is deemed received, and thereby avoid the statute's mandatory disclosure requirements through internal administrative rules, would represent precisely the kind of agency-created authority the Supreme Court has warned against. Agencies possess only those powers delegated by Congress, and they may not "exploit some gap, ambiguity, or doubtful expression" in statutory text to assume responsibilities far beyond those actually conferred by law. *Id.* at 721–22. Because Congress directed that **each agency** must disclose records upon request, the Department of Justice cannot nullify that command by interposing a self-constructed "sub-agency" barrier between the requester and the statute.

110.    Even if the Department of Justice maintains internal regulations directing FOIA requests to specific components, those administrative practices cannot override the statutory duties imposed by Congress. Courts consistently hold that agency regulations may facilitate FOIA processing but cannot impose additional substantive requirements that restrict a requester's statutory right of access. A request need only reasonably describe the records sought and comply with the agency's published rules. 5 U.S.C. § 552(a)(3)(A). Plaintiff's request satisfied those requirements by identifying the relevant individuals, subject matter, and time frame of the records sought, thereby enabling the Department to locate responsive materials within its record systems. Once a request reasonably describes the records, the agency bears the burden of conducting a search reasonably calculated to uncover responsive documents. An agency cannot defeat that obligation by arguing that the request was directed to the wrong internal office or by requiring the requester to navigate the agency's internal organizational structure. To hold otherwise would allow agencies to defeat FOIA through bureaucratic complexity, a result incompatible with FOIA's central purpose of ensuring informed public oversight of governmental conduct. Accordingly, Defendant cannot rely on internal component-routing practices to avoid its statutory duty to search for and produce responsive records maintained anywhere within the Department of Justice.

111.    Plaintiff has fully exhausted all administrative remedies required under the Freedom of Information Act. Plaintiff submitted written FOIA requests to both the Federal Bureau of Investigation and the Office of Information Policy of the Department of Justice seeking records concerning the identified individuals and the 1997 murder investigation referenced in Exhibits B and C (and thereafter). After receiving inadequate responses and

denials from the agency, Plaintiff timely pursued administrative appeals through the Department of Justice's FOIA appeal process. Those appeals were denied, thereby constituting final agency action. Alternatively, to the extent the Department failed to comply with the statutory time limits for responding to Plaintiff's requests and appeals, Plaintiff is deemed to have constructively exhausted administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C). Because the Department has improperly withheld agency records and administrative remedies have been exhausted, this Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) to order the production of the requested records.

112.    Here, DOJ has constructively or actually withheld agency records improperly, and Plaintiff now turns to this Court for relief.

### Claim I: Violation of the Freedom of Information Act (5 U.S.C. § 552) Wrongful Withholding of Agency Records

*113.    Plaintiff realleges and incorporates by reference preceding paragraphs 1 through 113 as if fully set forth herein, thereby avoiding the "shotgun pleading" concerns addressed by the Eleventh Circuit. See Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1320–23 (11th Cir. 2015); Jackson v. Bank of Am., N.A., 898 F.3d 1348, 1356–58 (11th Cir. 2018); Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1294–96 (11th Cir. 2018).*

114.    The records requested by Plaintiff are agency records of the DOJ, within the meaning of FOIA. DOJ (including its components such as the FBI and EOUSA) has either denied Plaintiff's request, failed to conduct an adequate search, or otherwise improperly withheld the requested records in violation of 5 U.S.C. § 552(a)(3)(A).

115.    Under FOIA, "each agency, upon any request for records which… reasonably describes such records… shall make the records promptly available to any person", unless one of FOIA's specific exemptions applies. DOJ's failure to provide any responsive

records, or to demonstrate that all such records (or reasonably segregable portions thereof) are exempt, constitutes a violation of FOIA.

116.     Plaintiff, through his FOIA request, properly asked for identifiable records about specific individuals and events (the Ortiz murder and related investigations). These are precisely the type of records subject to FOIA disclosure.

117.     There is no legal basis for the DOJ's refusal to search for records across its components once a request is directed to the Department as a whole. FOIA's definition of "agency" includes executive departments like the DOJ, and the DOJ cannot shirk its obligation by artificially subdividing itself.

118.     By limiting its search to only the FBI's files (and requiring separate requests for other components), DOJ failed to conduct a search reasonably calculated to uncover all relevant records, as required by law.

119.     Moreover, DOJ's conclusory invocation of exemptions (such as Exemption 7(C) for personal privacy) is unlawful given the overwhelming public interest in disclosure.

120.     Courts have held that when disclosure would shed light on government misconduct, privacy exemptions do not justify withholding information (the requester's interest in exposing potential governmental impropriety is a "significant" public interest that can overcome privacy concerns).

121.     In this case, any minimal privacy interests of the individuals (many of whom are public figures in the context of this case or have themselves spoken about it) are outweighed by the public's right to know about possible wrongdoing by law enforcement.

122.     Furthermore, Plaintiff has provided a Privacy Act consent from John Tortora, Jr., eliminating any privacy basis for withholding Tortora's own records.

123.    Richard Ortiz is deceased, which nullifies any personal privacy exemption for records about him.

124.    Any ongoing investigation concerns are moot: Tortora's prosecution ended years ago, and the Ortiz murder case is closed. Thus, no valid FOIA exemptions apply to the bulk of the requested material.

125.    By failing to release responsive records, DOJ (Defendant) has unlawfully withheld agency records in violation of FOIA. Plaintiff has a statutory right to these records, and no lawful basis exists for DOJ's refusal.

126.    Unless enjoined by this Court, DOJ will continue to flout FOIA and withhold records to which Plaintiff (and the public) are entitled.

127.    Plaintiff therefore seeks an order compelling DOJ to conduct a comprehensive search of all likely locations (including FBI headquarters, FBI New York Field Office, the SDNY U.S. Attorney's Office/EOUSA, and any DOJ leadership offices that may have been involved) and to produce all responsive, non-exempt records, with Vaughn indices for any portions withheld under claim of exemption.

### Claim II: Declaratory Judgment
### FOIA Implementation Contrary to Law (5 U.S.C. § 552 & 28 U.S.C. § 2201)

128.    Plaintiff realleges and incorporates by reference preceding paragraphs 1 through 113 as if fully set forth herein, thereby avoiding the "shotgun pleading" concerns addressed by the Eleventh Circuit. See *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320–23 (11th Cir. 2015); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–58 (11th Cir. 2018); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294–96 (11th Cir. 2018).

129.    FOIA's Statutory Command: Congress, through FOIA, mandated that "agency" records be accessible to the public upon request, subject only to delineated exemptions.

130.    Congress defined "agency" broadly to include any executive department, military department, government corporation, government-controlled corporation, or other establishment in the executive branch (including the Executive Office of the President), or any independent regulatory agency.

131.    The Department of Justice is plainly an "executive department" and therefore a single FOIA-covered agency. FOIA does not recognize internal subcomponents of an agency as separate entities for FOIA compliance purposes.

132.    In other words, Congress spoke directly to which entities must comply with FOIA – each department as a whole – and did not grant those departments the authority to segment their FOIA obligations among sub-units to the detriment of requesters.

133.    DOJ's Unlawful "Sub-Agency" FOIA Rule: Despite FOIA's clear definition, DOJ has implemented regulations and practices that effectively limit FOIA requests to individual "components" of DOJ, such as the FBI, EOUSA, DEA, etc. DOJ directs requesters to identify the specific component likely to have the records, and in practice, DOJ often refuses to forward requests to other components or to conduct cross-component searches.

134.    This policy forces requesters to file multiple separate FOIA requests for a single subject matter that happens to involve more than one DOJ component.

135.    In Plaintiff's case, DOJ (through OIP on appeal) took the position that Plaintiff's request had to be confined to the FBI alone and that records held by other DOJ components (like the U.S. Attorney's Office) would not be provided absent separate requests.

136.    DOJ's FOIA regulation or practice of treating its components as distinct for FOIA processing is not supported by the text of FOIA. It effectively rewrites the statute by

narrowing the definition of "agency" to mean each sub-agency component, which is something Congress did not authorize.

137.     The Supreme Court's recent decision in *West Virginia v. EPA*, 597 U.S. 697 (2022), underscores that executive agencies must have clear congressional authorization when they make decisions of vast "economic and political significance," or when they attempt to substantially alter the balance of authority set by statute.

138.     This principle, known as the major questions doctrine, is rooted in the separation of powers and prevents agencies from asserting extraordinary powers not clearly granted by Congress.

139.     Here, DOJ's limitation of FOIA requests to its subcomponents represents an agency-driven narrowing of a broad transparency mandate that Congress established. While *West Virginia v. EPA* addressed an agency overreaching its regulatory authority, the core teaching applies: an agency may not make a significant unilateral change to a statutory scheme without clear congressional approval.

140.     Congress commanded that the DOJ (as a whole) is subject to FOIA; the DOJ cannot, by internal policy, fragment itself such that a FOIA request to "DOJ" is not honored in full.

141.     DOJ's policy effectively requires the public to know the DOJ's internal organizational chart and guess which sub-agency holds the desired records, or else risk a denial. This self-imposed compartmentalization of FOIA duties is nowhere contemplated in FOIA's text and undermines FOIA's purpose of broad disclosure.

142.     Moreover, DOJ's sub-agency FOIA regime amounts to an unconstitutional self-delegation or abdication of its non-discretionary duty under FOIA. Congress placed the

duty to respond to FOIA requests on the "agency" (here, DOJ) as a whole. By splitting this duty among components and then rejecting comprehensive requests, DOJ has delegated a portion of its statutory responsibility to entities not recognized as separate under the law.

143.    An agency cannot internally divest itself of a congressional mandate. To allow DOJ's approach would be to let an agency determine the scope of its own transparency obligations – a classic scenario of the fox guarding the henhouse, and a violation of basic separation-of-powers norms.

144.    Under the FOIA statute, the DOJ as an entity must search all locations likely to have responsive records once a proper request is received, regardless of bureaucratic divisions. DOJ's contrary regulation and practice constitute an *ultra vires* action that flouts the statute Congress enacted.

145.    Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that DOJ's implementation of FOIA – specifically any regulation, policy, or practice requiring requesters to direct requests to component sub-agencies and refusing to treat a department-wide FOIA request as encompassing all DOJ components – is unlawful and invalid.

146.    Such a declaration will clarify the parties' rights and obligations and guide DOJ's future handling of FOIA requests, not only for Plaintiff but for all requesters dealing with DOJ. It will affirm that FOIA means what it says: the Department of Justice is an "agency" and must ensure its own compliance, rather than deflecting requests with internal technicalities.

147.    Declaratory relief is appropriate because an actual, present controversy exists. Plaintiff contends that DOJ must process his FOIA request across all its components (or at

least forward it to the components likely to have records) as a single agency request, while DOJ's position (as evidenced by its appeal denial) is that it need not do so.

148.    The Court's declaration will resolve this legal question of statutory interpretation and agency authority, which has broad implications for FOIA administration.

149.    Furthermore, resolving this issue falls under the "major questions" canon: FOIA is a central transparency law, and any agency practice that limits FOIA rights is a matter of great public importance requiring clear authority.

150.    Here, the only pertinent authority (the FOIA statute) contradicts DOJ's position. Therefore, a declaration in Plaintiff's favor is warranted to prevent the DOJ from continuing to violate the FOIA's mandate.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

A. A declaratory judgment that Defendant DOJ's failure to adequately search for and release the requested records violates FOIA, and that DOJ's policy or practice of requiring component-specific FOIA requests (rather than processing department-wide requests) is contrary to FOIA and unlawful.

B. An injunction compelling Defendant DOJ to promptly conduct a reasonable search for all records responsive to Plaintiff's FOIA request across all relevant DOJ components (including but not limited to the FBI, EOUSA (specifically the U.S. Attorney's Office for the Southern District of New York), and any other DOJ entity that might reasonably possess responsive records), and to produce all non-exempt records responsive to Plaintiff's request. The injunction should further order DOJ to disclose forthwith all requested

records, or segregable portions of records, not exempt under FOIA, and to enjoin DOJ from continuing to withhold any such records.

C. A declaratory judgment that DOJ's FOIA regulations, policies, or practices cannot override the FOIA statute's definition of "agency," and specifically that DOJ must process FOIA requests at the department level (with internal referrals as needed) rather than requiring separate requests for each subcomponent. (In other words, declare that DOJ's current "sub-agency" implementation of FOIA is invalid as applied to Plaintiff's request and generally.)

D. Attorney's fees and litigation costs reasonably incurred by Plaintiff in this action, pursuant to 5 U.S.C. § 552(a)(4)(E) (FOIA's fee-shifting provision), 28 U.S.C. § 2412 (Equal Access to Justice Act, if applicable), and any other applicable law.

E. Any other relief that this Court deems just and proper, including but not limited to in camera review of withheld documents, if necessary, and ongoing Court supervision to ensure full compliance with the FOIA and this Court's orders.

Dated: Naples, Florida
March 9, 2026

Respectfully submitted,

Richard A. Luthmann, Jr.
Plaintiff *Pro Se*
4199 Los Altos Court
Naples, FL 34109
Tel: (239) 631-5957
Email: richard.luthmann@protonmail.com



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

---------------------------------------------------------------

RICHARD A. LUTHMANN, JR.

                    Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

                    Defendant.

---------------------------------------------------------------

## DECLARATION OF JOHN TORTORA, JR.
### *(Privacy Act Waiver and Consent for Release of Information)*

I, John Tortora, Jr., hereby declare as follows:

1. I am over the age of eighteen and competent to make this declaration. I have personal knowledge of the facts stated herein. I make this declaration voluntarily and without coercion.

2. My name is John Tortora, Jr. I was born on ___1/02/1952___

3. I hereby voluntarily, knowingly, and expressly consent to the disclosure of any and all records, files, reports, communications, or other materials concerning me that are maintained by the United States Department of Justice, as that term is used in the Freedom of Information Act, 5 U.S.C. § 552, including any and all records held by the Department of Justice or any of its components, subdivisions, offices, or units, including but not limited to:

    a. the Federal Bureau of Investigation (FBI);

    b. the Executive Office for United States Attorneys (EOUSA);

    c. any United States Attorney's Office, including the U.S. Attorney's Office for the Southern District of New York; and

    d. any other DOJ office or component that maintains records concerning me.

1

**LUTHMANN COMPLAINT EXHIBIT 0001**

4. This consent is given for the purpose of facilitating and authorizing disclosure in connection with one or more Freedom of Information Act requests submitted by journalist and reporter Richard A. Luthmann, and in connection with the above-captioned civil action seeking disclosure of such records.

5. I understand that the Privacy Act of 1974, 5 U.S.C. § 552a(b), generally prohibits federal agencies from disclosing records about an individual without that individual's written consent, subject to certain exceptions. By this declaration, I waive any and all Privacy Act protections applicable to records concerning me and authorize their disclosure in full to Richard A. Luthmann.

6. This authorization includes, without limitation, records relating to investigations, prosecutions, charging decisions, witness statements, cooperation agreements, communications, internal memoranda, reports, or any other matters, whether criminal, civil, or administrative, in which I am referenced or involved.

7. I further authorize the disclosure of such records without further notice to me, and I waive any right to object to their release on privacy grounds.

8. This declaration is intended to satisfy any and all legal requirements for a Privacy Act waiver, written authorization, consent to disclosure, or proof of identity. A photocopy or scanned copy of this declaration shall be deemed as valid and effective as an original.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 1/21/26

_____
John Tortora, Jr.

Sworn to me this 21st day of January 2026

NANCY Y MUNOZ
Notary Public, State of New York
No. 01MU4941392
Qualified in Westchester County
Commission Expires Sept. 10, 20__

2

**LUTHMANN COMPLAINT EXHIBIT 0002**



EXHIBIT

B

Richard A. Luthmann
4199 Los Altos Court
Naples, FL 34109
Tel: (239) 631-5957
richard.luthmann@protonmail.com
Luthmann.Substack.com

December 3, 2024

**Via U.S. Mail**

FOIA/Privacy Act Request
Federal Bureau of Investigation
Department of Justice
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

**Subject: Freedom of Information Act Request**

Dear FOIA Officer,

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, I am requesting all records, files, reports, and communications in the possession of the FBI relating to the following individuals:

1. **John Tortora, Jr.**
2. **Detective John T. Geiss (Yonkers, New York Police Department)**
3. **Carmine Francomano**
4. **Abdill Saez**
5. **Richard Ortiz**

1

Please include all records relating to investigations, interviews, field notes, and internal communications, including those tied to the 1997 murder of Richard Ortiz in Yonkers, New York, and related events.

Additionally, please search the FBI's indices to the Central Records System for the information responsive to this request related to:

1. **John Tortora, Jr.**
2. **Detective John T. Geiss (Yonkers, New York Police Department)**
3. **Carmine Francomano**
4. **Abdill Saez**
5. **Richard Ortiz**

Date range of request: January 1, 1997 to present

If any portion of these records is exempt from disclosure, please provide the non-exempt portions. Additionally, I request that you provide an explanation for any deletions or exemptions applied.

I am willing to pay up to $1,000.00 for the processing of this request. Please inform me if the estimated fees will exceed this limit before processing my request.

I am seeking information for use under the PRESS CLAUSE of the First Amendment to the U.S. Constitution and other reasons under 5 U.S.C. § 552, related federal law, and the clear Congressional intent for public access to governmental records. I am a journalist and member of the National Writers Union.

Please do not lie or engage in dishonesty relating to this request for information.

Thank you for your attention to this request.

Regards,

Richard A. Luthmann

CC:    File

2

**LUTHMANN COMPLAINT EXHIBIT 0004**



**EXHIBIT**

**C**

Richard A. Luthmann
4199 Los Altos Court
Naples, FL 34109
Tel: (239) 631-5957
richard.luthmann@protonmail.com
Luthmann.Substack.com

December 3, 2024

<u>**Via U.S. Mail**</u>

FOIA/Privacy Act Request
Office of Information Policy
U.S. Department of Justice
441 G Street NW, Sixth Floor
Washington, DC 20530-0001

      **Subject: Freedom of Information Act Request**

Dear FOIA Officer,

      Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, I am requesting all records, files, reports, and communications in the possession of the DOJ relating to the following individuals:

1. **John Tortora, Jr.**
2. **Detective John T. Geiss (Yonkers, New York Police Department)**
3. **Carmine Francomano**
4. **Abdill Saez**
5. **Richard Ortiz**

1

**LUTHMANN COMPLAINT EXHIBIT 0005**

Please include all records relating to investigations, interviews, field notes, and internal communications, including those tied to the 1997 murder of Richard Ortiz in Yonkers, New York, and related events.

Additionally, please search the DOJ's indices to the Central Records System for the information responsive to this request related to:

1. **John Tortora, Jr.**
2. **Detective John T. Geiss (Yonkers, New York Police Department)**
3. **Carmine Francomano**
4. **Abdill Saez**
5. **Richard Ortiz**

Date range of request: January 1, 1997 to present

If any portion of these records is exempt from disclosure, please provide the non-exempt portions. Additionally, I request that you provide an explanation for any deletions or exemptions applied.

I am willing to pay up to $1,000.00 for the processing of this request. Please inform me if the estimated fees will exceed this limit before processing my request.

I am seeking information for use under the PRESS CLAUSE of the First Amendment to the U.S. Constitution and other reasons under 5 U.S.C. § 552, related federal law, and the clear Congressional intent for public access to governmental records. I am a journalist and member of the National Writers Union.

Please do not lie or engage in dishonesty relating to this request for information.

Thank you for your attention to this request.

Regards,

Richard A. Luthmann

CC:    File

2

**LUTHMANN COMPLAINT EXHIBIT 0006**



**EXHIBIT D**

**U.S. Department of Justice**

_Federal Bureau of Investigation_
_Washington, D.C. 20535_

December 23, 2024

RICHARD ALBERT LUTHMANN
4199 LOS ALTOS COURT
NAPLES, FL 34109

Request No.: 1655259-000
Subject: ORTIZ, RICHARD ET AL
(January 1, 1997 to Present)

Dear Richard Luthmann:

This is in response to your Freedom of Information/Privacy Acts (FOIPA) request.  Based on the information you provided, we conducted a main entity record search of the Central Records System (CRS) per our standard search policy.  However, we were unable to identify records subject to the FOIPA that are responsive to your request.  Therefore, your request is being closed.  If you have additional information pertaining to the subject of your request, please submit a new request providing the details, and we will conduct an additional search. For more information about records searches and the standard search policy, see the enclosed FBI FOIPA Addendum General Information Section.

Please see the paragraphs below for relevant information that may be specific to your request. Only checked boxes contain corresponding paragraphs relevant to your request.  If no boxes are checked, the corresponding information does not apply.

☐ Please be advised that your request was reopened based on the additional information you provided.  A new search was conducted, and we were unable to identify records subject to the FOIPA that are responsive to your request.

☐ Records potentially responsive to your request were destroyed.  Since this material could not be reviewed, it is not known if it was responsive to your request.  Record retention and disposal is carried out under supervision of the National Archives and Records Administration (NARA) according to Title 44 United States Code Section 3301, Title 36 Code of Federal Regulations (CFR) Chapter 12 Sub-chapter B Part 1228, and 36 CFR 1229.10.  Please be advised that the General Records Schedule (GRS) disposition authority for FOIPA records is DAA-GRS-2016-0002-0001 (GRS 4.2, Item 020).

☐ Records potentially responsive to your request were transferred to the National Archives and Records Administration (NARA).  If you wish to review these records, file a FOIPA request with NARA at the following address:

National Archives and Records Administration
Special Access and FOIA
8601 Adelphi Road, Room 5500
College Park, MD 20740-6001

☐ Potentially responsive records were identified during the search.  However, we were advised that they were not in their expected locations.  An additional search for the missing records also met with unsuccessful results.  Since we were unable to review the records, we were unable to determine if they were responsive to your request.

☐ The identification records requested are maintained by the FBI's Criminal Justice Information Services (CJIS) Division; therefore, we have forwarded a portion of your request to CJIS for processing.  To check the status of this request, please contact CJIS directly at (304) 625-5590. For additional information, see the enclosed FBI FOIPA Addendum General Information Section.

☐ Requests for expedited processing are not applicable when a final response is issued within ten calendar days.

**LUTHMANN COMPLAINT EXHIBIT 0007**

Police departments should be aware that the search conducted was limited to FBI records. Requests for criminal history records or rap sheets should be directed to Criminal Justice Information Services (CJIS). Information regarding CJIS is listed in the enclosed FBI FOIPA Addendum General Information Section.

Records potentially responsive to your request were transferred to the National Personnel Records Center – Civilian Personnel Records (NPRC-CPR). In order to obtain information on a file located at the NPRC, your request must be mailed to the following address:

> National Archives and Records Administration
> ATTN: Archival Programs
> P.O. Box 38757
> St. Louis, MO 63138

You also requested information regarding one or more third parties. Please be advised the FBI will neither confirm nor deny the existence of such records pursuant to FOIA exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C). The mere acknowledgement of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy. This is our standard response to such requests and should not be taken to mean that records do, or do not, exist.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

Additional information about the FOIPA can be found at www.fbi.gov/foia. Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of this response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." If possible, please provide a copy of your original request and this response letter with your appeal.

You may seek dispute resolution services by emailing the FBI's FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified. You may also contact the Office of Government Information Services (OGIS). The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division

Enclosures

**LUTHMANN COMPLAINT EXHIBIT 0008**

## FBI FOIPA Addendum

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request.  Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information.  Part 3 includes general information about FBI records, searches, and programs.

**Part 1: The standard responses below apply to all requests:**

(i)    **5 U.S.C. § 552(c).**  Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)].  FBI responses are limited to those records subject to the requirements of the FOIPA.  Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)   **Intelligence Records.**  To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)].  The mere acknowledgement of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].  This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)    **Requests for Records about any Individual—Watch Lists.**  The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].  This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)   **Requests for Records about any Individual—Witness Security Program Records.**  The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)].  This is a standard response and should not be read to indicate that such records do or do not exist.

(iii)  **Requests for Confidential Informant Records.**  The FBI can neither confirm nor deny the existence of confidential informant records pursuant to FOIA exemptions (b)(7)(D), (b)(7)(E), and (b)(7)(F) [5 U.S.C.§ § 552 (b)(7)(D), (b)(7)(E), and (b)(7)(F)] and Privacy Act exemption (j)(2) [5 U.S.C.§ 552a (j)(2)]. The mere acknowledgement of the existence or nonexistence of such records would reveal confidential informant identities and information, expose law enforcement techniques, and endanger the life or physical safety of individuals. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)    **Record Searches and Standard Search Policy.**  The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems, such as the Central Records System (CRS), or locations where responsive records would reasonably be found. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions.   The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. The standard search policy is a search for main entity records in the CRS. Unless *specifically requested, a standard search does not include* a search for reference entity records or administrative records of previous FOIPA requests.

        a.   *Main Entity Records* – created for individuals or non-individuals who are the subjects or the focus of an investigation
        b.   *Reference Entity Records-* created for individuals or non-individuals who are associated with a case but are not known subjects or the focus of an investigation

(ii)   **FBI Records.**  Founded in 1908, the FBI carries out a dual law enforcement and national security mission.  As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)  **Foreseeable Harm Standard.**  As amended in 2016, the Freedom of Information Act provides that a federal agency may withhold responsive records only if: (1) the agency reasonably foresees that disclosure would harm an interest protected by one of the nine exemptions that FOIA enumerates, or (2) disclosure is prohibited by law (5 United States Code, Section 552(a)(8)(A)(i)).  The FBI considers this foreseeable harm standard in the processing of its requests.

(iv)   **Requests for Criminal History Records or Rap Sheets.**  The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet.  These criminal history records are not the same as material in an investigative "FBI file."  An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.  *For a fee, individuals can request a copy of their Identity History Summary Check.*  Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.  Additionally, requests can be submitted electronically at www.edo.cjis.gov.  For additional information, please contact CJIS directly at (304) 625-5590.

**LUTHMANN COMPLAINT EXHIBIT 0009**

## EXPLANATION OF EXEMPTIONS

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)  information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

**LUTHMANN COMPLAINT EXHIBIT 0010**



U.S. Department of Justice

Federal Bureau of Investigation
*Washington, D.C. 20535*

December 26, 2024

RICHARD ALBERT LUTHMANN
4199 LOS ALTOS COURT
NAPLES, FL 34109

Request No.: 1655379-000
Subject: NOSHIRVAN, DANESH

Dear Richard Luthmann:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to the FBI. The FOIPA Request Number listed above has been assigned to your request. Below you will find information relevant to your request. Please read each paragraph carefully.

*You have requested records on one or more third party individuals.* Please be advised the FBI will neither confirm nor deny the existence of such records pursuant to FOIA exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C). The mere acknowledgement of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy. This is our standard response to such requests and should not be taken to mean that records do, or do not, exist. As a result, your request has been closed. Please visit www.fbi.gov/foia and select "Requesting FBI Records" for more information about making requests for records on third party individuals (living or deceased).

If you submitted your request through the FBI's eFOIPA portal and you are receiving correspondence through standard mail, it was determined your request did not meet the eFOIPA terms of service.

Should you have questions regarding your request, please feel free to contact foipaquestions@fbi.gov. Please reference the FOIPA Request number listed above in all correspondence concerning your request.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." If possible, please provide a copy of your original request and this response letter with your appeal.

You may seek dispute resolution services by emailing the FBI's FOIA Public Liaison at foipaquestions@fbi.gov. The subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified. You may also contact the Office of Government Information Services (OGIS). The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

**LUTHMANN COMPLAINT EXHIBIT 0011**

Enclosed for your information is a copy of the Explanation of Exemptions.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division

Enclosure

**LUTHMANN COMPLAINT EXHIBIT 0012**

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

**LUTHMANN COMPLAINT EXHIBIT 0013**

LUTHMANN COMPLAINT EXHIBIT 0014

USPS TRACKING #

9590 9402 9091 4122 8714 59

United States
Postal Service

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Richard Luthmann
4199 Los Altos Ct.
Naples FL 34109

12/27

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

FOIA / Privacy Act Request
Office of Information Policy
US Department of Justice
441 G Street NW, 6th FL
Washington DC 20530-0001

9590 9402 9091 4122 8714 59

2. Article Number (Transfer from service label)

9589 0710 5270 1455 2379 32

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

DEC 23 2024

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ___ail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

LUTHMANN COMPLAINT EXHIBIT 0015

MP FOIA 2.

My Account    Sign Out    Help

HOME    TRACKING INBOX



Tracking Inbox • Appeal

## A-2025-01094

Requester:  Luthmann, Richard A

Status: Submitted

### Appeal

#### Appeal Information

| | | | |
|---|---|---|---|
| Received Date | 03/18/2025 | Agency | OIP |
| | | Document Delivery Method | Email |

#### Request Information

| | |
|---|---|
| Request Number | 1655259-000 |
| Component | FBI |
| Subject of Request | Dear FOIA Officer, |

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, I am requesting all records, files, reports, and communications in the possession of the FBI relating to the following individuals:
1. John Tortora, Jr.
2. Detective John T. Geiss (Yonkers, New York Police Department)
3. Carmine Francomano
4. Abdill Saez
5. Richard Ortiz
Please include all records relating to investigations, interviews, field notes, and internal communications, including those tied to the 1997 murder of Richard Ortiz in Yonkers, New York, and related events.
Additionally, please search the DOJ's indices to the Central Records System for the information responsive to this request related to:
1. John Tortora, Jr.
2. Detective John T. Geiss (Yonkers, New York Police Department)
3. Carmine Francomano
4. Abdill Saez
5. Richard Ortiz
Date range of request: January 1, 1997 to present
If any portion of these records is exempt from disclosure, please provide the non-exempt portions. Additionally, I request that you provide an explanation for any deletions or exemptions applied.
I am willing to pay up to $1,000.00 for the processing of this request. Please inform me if the estimated fees will exceed this limit before processing my request.
I am seeking information for use under the PRESS CLAUSE of the First Amendment to the U.S. Constitution and other reasons under 5 U.S.C. § 552, related federal law, and the clear Congressional intent for public access to governmental records. I am a journalist and member of the National Writers Union.
Please do not lie or engage in dishonesty relating to this request for information.
Thank you for your attention to this request.
Regards,
/S/ Richard A. Luthmann

#### Basis for Appeal

**LUTHMANN COMPLAINT EXHIBIT 0016**

| | |
|---|---|
| Description of Appeal | The FBI's response is wholly inadequate and runs afoul of applicable law and the facts.

A letter from the NYPD Legal Bureau FOIL Unit dated January 7, 2025, confirms that the NY Field Office of the FBI is in possession of relevant and responsive documents.

Applying the Major Questions Doctrine to FOIA and Privacy Act Enforcement

The Major Questions Doctrine holds that federal agencies cannot assert regulatory powers of economic and political significance without clear congressional authorization. West Virginia v. EPA, 597 U.S. 697, 720-24 (2022). This doctrine acts as a carve-out from Chevron deference when agencies claim authority over significant issues not clearly granted by statute.

FOIA's Plain Text vs. Agency Procedural Rules

The Freedom of Information Act (FOIA) states that "each agency, upon any request for records... shall make the records promptly available." 5 U.S.C. § 552(a)(3)(A). FOIA places no textual condition on a "perfected" request beyond a general requirement that the request "reasonably describe" the records sought and is made "in accordance with published rules."

However, federal courts and agencies--like in Ghassan v. United States DOJ, Civil Action No. 22-1615 (RDM), 2023 U.S. Dist. LEXIS 20831 (D.D.C. Feb. 8, 2023)--have imposed additional procedural hurdles, ruling that an agency has no obligation to search for records unless a requester perfectly complies with agency-specific regulations, sometimes unpublished or inconsistently applied.

Major Questions Doctrine Problem

The agency-created rule effectively shifts the burden of proof in FOIA cases, allowing agencies to deny substantive obligations by claiming non-receipt or technical flaws in requests. Under West Virginia v. EPA, this amounts to agencies expanding their statutory authority without clear congressional direction, raising three MQD concerns:

Economic and Political Significance

FOIA is a central transparency statute with vast public interest. Limiting access through agency-crafted procedural traps has significant political consequences by restricting access to potentially damaging or sensitive government records.

No Clear Congressional Authorization

Nowhere does FOIA explicitly give agencies the power to impose non-statutory perfection requirements or deny judicial review based on internal procedural rules. The statute's exhaustion provision presumes a right to sue once an agency improperly withholds records--not based on technical receipt issues.

Agency Self-Delegation of Gatekeeping Powers

Agencies have made themselves the sole judges of whether a FOIA request was "received" or properly "perfected," granting themselves unchecked discretion to evade disclosure. Under MQD, such a self-serving expansion of agency power requires clear authorization, which FOIA does not provide.

Privacy Act Similarity

The Privacy Act, 5 U.S.C. § 552a, contains similar statutory rights to access records. Courts applying hyper-technical receipt or perfection rules similarly risk violating MQD by letting agencies unilaterally nullify Congress's clear right-of-access provision without statutory support.

Conclusion

Under the Major Questions Doctrine, judicial doctrines requiring perfected requests or giving agency declarations presumptive weight--as seen in Ghassan v. DOJ--exceed congressional authorization. FOIA's plain language creates a duty to produce records upon any valid request, not a technical one perfected to agency satisfaction. Courts must demand clear statutory authorization for procedural barriers that nullify the core right to information, especially in laws designed to ensure government transparency. |
| Based on Denial of Fee Waiver | No |
| Based on Denial of Expedited Processing | No |
| Requester Item Type 1 | Supplemental Information |
| Requester Items 1 | NYPD Letter.pdf |
| Requester Item Type 2 | Supplemental Information |
| Requester Items 2 | West Virginia v. EPA_597 U.S. 697.pdf |
| Requester Item Type 3 | Certification of Identity |
| Requester Items 3 | FL DL.pdf |

**Requester Contact Information**

| | | | |
|---|---|---|---|
| Salutation | Mr. | Address Type | |
| First Name | Richard | Country | United States |
| Middle Name | A | Address Line 1 | 4199 Los Altos Court |
| Last Name | Luthmann | Address Line 2 | |
| Email Address | richard.luthmann@protonmail.com | City | Naples |
| Organization | | State | Florida |
| Register Number | | Zip/Postal Code | 34109 |

## LUTHMANN COMPLAINT EXHIBIT 0017

Phone Number                        2396315957

Fax Number

Other Information

**Expedited Processing Information**

Expedited Processing Requested?        No

Powr

**LUTHMANN COMPLAINT EXHIBIT 0018**



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*



March 19, 2025

richard.luthmann@protonmail.com

Dear Richard Luthmann:

This is to advise you that the Office of Information Policy of the U.S. Department of Justice received your administrative appeal from the action of the Federal Bureau of Investigation regarding Request No. 1655259-000 on 03/18/2025.

In an attempt to afford each appellant equal and impartial treatment, OIP has adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number A-2025-01094. Please refer to this number in any future communication with OIP regarding this matter. Please note that if you provided an email address or another electronic means of communication with your request or appeal, this Office may respond to your appeal electronically even if you submitted your appeal to this Office via regular U.S. Mail.

We will notify you of the decision on your appeal as soon as we can. If you have any questions about the status of your appeal, you may contact me at 202-514-3642. If you have submitted your appeal through Freedom of Information Act STAR, you may also check the status of your appeal by logging into your account.

Sincerely,

*Priscilla Jones*

Priscilla Jones
Supervisory Administrative Specialist

**LUTHMANN COMPLAINT EXHIBIT 0019**



**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*

*441 G Street, NW*

*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

**EXHIBIT**

**G**

Richard Luthmann

Re:   Appeal No. A-2025-01094

Request No. 1655259-000

richard.luthmann@protonmail.com

**VIA: Online Portal - 09/12/2025**

Dear Richard Luthmann:

You appealed from the action of the Federal Bureau of Investigation (FBI) on your Freedom of Information Act (FOIA) request for access to records concerning John Tortora, Jr., Detective John T. Geiss, Carmine Francomano, Abdill Saez, and Richard Ortiz.  I note that your appeal concerns the adequacy of the FBI's search as to Richard Ortiz and the FBI's refusal to confirm or deny the existence of records as to the other named individuals.

After carefully considering your appeal, I am affirming, on partly modified grounds, the FBI's action on your request.  The FOIA provides for disclosure of many agency records.  At the same time, Congress included in the FOIA nine exemptions from disclosure that provide protection for important interests such as personal privacy, privileged communications, and certain law enforcement activities.

As to the portions of your request concerning Detective John T. Geiss, Carmine Francomano, and Abdill Saez, the FBI properly refused to confirm or deny the existence of records responsive to your request.  Confirming or denying the existence of such records, including law enforcement records, concerning a third-party individual would constitute a clearly unwarranted invasion of personal privacy, and could reasonably be expected to constitute an unwarranted invasion of personal privacy.  See 5 U.S.C. § 552(b)(6), (7)(C). Additionally, it is reasonably foreseeable that confirming or denying the existence of such records would harm the interests protected by these exemptions.  See, e.g., People for the Ethical Treatment of Animals v. NIH, 745 F.3d 535, 544 (D.C. Cir. 2014) (upholding agency's refusal to confirm or deny existence of records that would confirm whether investigation of third party had occurred); see also Antonelli v. FBI, 721 F.2d 615, 618 (7th Cir. 1983) (finding that confirming whether third party has been the subject of investigation would likely "constitute an invasion of that person's privacy that implicates the protections of Exemptions 6

**LUTHMANN COMPLAINT EXHIBIT 0020**

and 7").

As to the portion of your request concerning John Tortora, Jr., to the extent that non-public responsive records exist, disclosure of such records, including law enforcement records, concerning a third-party individual would constitute a clearly unwarranted invasion of personal privacy, and could reasonably be expected to constitute an unwarranted invasion of personal privacy. See 5 U.S.C. § 552(b)(6), (7)(C). Further, it is reasonably foreseeable that releasing any non-public records, to the extent such records exist, would harm the interests protected by these exemptions. Because any non-public records responsive to your request would be categorically exempt from disclosure, the FBI properly asserted these exemptions and was not required to conduct a search for the requested records. See, e.g., DOJ v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 780 (1989) (holding "as a categorical matter" pursuant to Exemption 7(C) that release of investigatory records concerning a third party "can reasonably be expected to invade" that person's privacy and that such an invasion is unwarranted in the absence of an overriding public interest).

Finally, as to the portion of your request concerning Richard Ortiz, the FBI informed you that it could locate no responsive records subject to the FOIA in its files. I have determined that the FBI's action was correct and that it conducted an adequate, reasonable search for such records.

Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of the FBI in response to your request.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll-free at 1-877-684-6448; or facsimile at 202-741-5769. If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office and speak with the undersigned agency official by calling 202-514-3642.

Sincerely,

X _____

**LUTHMANN COMPLAINT EXHIBIT 0021**

Christina Troiani
Chief, Administrative Appeals Staff

**LUTHMANN COMPLAINT EXHIBIT 0022**



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*



EXHIBIT
H

December 17, 2024

Richard Luthmann
4199 Los Altos Court                    Re:    FOIA-2025-01213
Naples, FL  34109                               DRH:ERH:TATJ
richard.luthmann@protonmail.com

Dear Richard Luthmann:

    This responds to your Freedom of Information Act request dated December 3, 2024 and
received in this Office on December 16, 2024 seeking records pertaining to third parties.

    Your request has been received by the Office of Information Policy (OIP) of the United
States Department of Justice, which processes Freedom of Information Act (FOIA) and Privacy
Act (PA) requests for records it maintains as well as records maintained by the Offices of the
Attorney General, Deputy Attorney General, Associate Attorney General, Public Affairs,
Legislative Affairs, Legal Policy, and Executive Secretariat.  OIP also adjudicates
administrative appeals of denials of FOIA/PA requests made to the Department.  This Office
maintains the case files for the initial requests and administrative appeals it processes.  For your
information, neither this Office nor any of these senior leadership offices of the Department
typically maintains records on individuals and, as such, would not maintain the type of records
you are seeking.

    Please be advised that the FOIA provides a right of access to federal agency records that
exist and can be located in federal agency files.  The FOIA does not require agencies to conduct
research for you, to analyze data, to answer questions, or to create new records in response to a
FOIA request.  Moreover, the FOIA does not apply to records that are maintained by states,
counties, or cities, or by the legislative or judicial branches of the government.

    For your information, the FOIA operation for both the Department of Justice and the
federal government is decentralized and each Department component and federal entity
maintains and handles FOIA requests for its own records.  Accordingly, you need to direct your
letter to the office(s) you believe have records pertaining to the subject of your request.
Additional information regarding the federal government's administration of the FOIA,
including a listing of FOIA contact information, is available at www.foia.gov.  Based on the

**LUTHMANN COMPLAINT EXHIBIT 0023**

information you have provided, I cannot determine the nature of the records you are seeking and therefore cannot recommend a federal entity to which you should submit your request. If you would like assistance in formulating your request, you can also contact OIP at the telephone number listed above.

Lastly, you have requested records pertaining to a third party. Therefore, should you wish to resubmit your request to this or another component of the Department of Justice, to help with the processing of your request, you should provide a written authorization signed by the individual, permitting the disclosure to you of records pertaining to him/her or provide proof that he/she are deceased. A Certification of Identity form that may be used for this purpose may be found may be found online at https://www.justice.gov/oip/doj-reference-guide-attachment-d-copies-forms . For your information, this form pertains only to the Department of Justice. Other federal entities may require similar verification of identity.

You may contact our FOIA Public Liaison, Valeree Villanueva, for any further assistance and to discuss any aspect of your request at: Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, telephone at 202-514-3642.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, MD 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with this Offices determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, or you may submit an appeal through OIPs FOIA STAR portal by creating an account following the instructions on OIPs website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." If possible, please provide a copy of your original request and this response letter with your appeal.

Sincerely,

Douglas R. Hibbard
Chief, Initial Request Staff

**LUTHMANN COMPLAINT EXHIBIT 0024**



👤 My Account    ➡ Sign Out    ❓ Help

HOME    TRACKING INBOX

Tracking Inbox  »  Appeal

**A-2025-00574**

Requester: Luthmann , Richard A

Status: Submitted



**Appeal**

## Appeal Information

| | | | |
|---|---|---|---|
| Received Date | 12/20/2024 | Agency | OIP |
| | | Document Delivery Method | Email |

## Request Information

| | |
|---|---|
| Request Number | FOIA-2025-01213 |
| Component | OIP |
| Subject of Request | Dear FOIA Officer, |

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, I am requesting all records, files, reports, and communications in the possession of the DOJ relating to the following individuals:

1. John Tortora, Jr.
2. *Detective John T. Geiss (Yonkers, New York Police Department)*
3. Carmine Francomano
4. Abdill Saez
5. Richard Ortiz

Please include all records relating to investigations, interviews, field notes, and internal communications, including those tied to the 1997 murder of Richard Ortiz in Yonkers, New York, and related events.

Additionally, please search the DOJ's indices to the Central Records System for the information responsive to this request related to:
1. John Tortora, Jr.
2. Detective John T. Geiss (Yonkers, New York Police Department)
3. Carmine Francomano
4. Abdill Saez
5. Richard Ortiz

Date range of request: January 1, 1997 to present

If any portion of these records is exempt from disclosure, please provide the non-exempt portions. Additionally, I request that you provide an explanation for any deletions or exemptions applied.

I am willing to pay up to $1,000,00 for the processing of this request. Please inform me if the estimated fees will exceed this limit before processing my request.

I am seeking information for use under the PRESS CLAUSE of the First *Amendment to the U.S. Constitution and other reasons under 5 U.S.C. §* 552, related federal law, and the clear Congressional intent for public access to governmental records. I am a journalist and member of the National Writers Union.

Please do not lie or engage in dishonesty relating to this request for information.

Thank you for your attention to this request.

Regards,

/S/ Richard A. Luthmann

## Basis for Appeal

Description of Appeal

December 20, 2024

The DOJ's response is wholly inadequate and runs afoul of applicable law.

The DOJ's response stated: "For your information, the FOIA operation for both the Department of Justice and the federal government is decentralized and each Department component and federal entity maintains and handles FOIA requests for its own records. Accordingly, you need to direct your letter to the office(s) you believe have records pertaining to the subject of your request.
Additional information regarding the federal government's administration of the FOIA, including a listing of FOIA contact information, is available at www.foia.gov. Based on the information you have provided, I cannot determine the nature of the records you are seeking and therefore cannot recommend a federal entity to which you should submit your request. If
you would like assistance in formulating your request, you can also contact OIP at the telephone number listed above."

The DOJ response is disingenuous at best. If the DOJ is this obtuse (and frankly stupid), it is a wonder we are all not speaking Chinese at this point.

Under the "major questions" doctrine, when an agency asserts the power to make a major policy decision under its statutory authority, that authority must have more than a colorable textual basis in the statute. Instead, the agency must point to a clear congressional authorization for the power it claims. See West Virginia v. EPA, 597 U.S, 697, 142 S, Ct, 2587 (2022).

The DOJ's policy of "decentralization" is an administrative decision that runs afoul of the US Supreme Court's pronouncement in West Virginia v. EPA.

For your information, 5 U.S.C.S. § 552 (f) and (g) state:

"(f) For purposes of this section, the term—
(1) "agency" as defined in section 551(1) of this title [5 USCS § 551(1)] includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency; and
(2) "record" and any other term used in this section in reference to information includes—
(A) any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format; and
(B) any information described under subparagraph (A) that is maintained for an agency by an entity under Government contract, for the purposes of records management.
(g) The head of each agency shall prepare and make available for public inspection in an electronic format, reference material or a guide for requesting records or information from the agency, subject to the exemptions in subsection (b), including—
(1) an index of all major information systems of the agency;
(2) a description of major information and record locator systems maintained by the agency; and
(3) a handbook for obtaining various types and categories of public information from the agency pursuant to chapter 35 of title 44 [44 USCS §§ 3501 et seq,], and under this section."

The text of 5 U.S.C.S. § 552 refers to the "agency" and not the "subagency" or any other subdivision that is not the "agency." Congress intended the operation of 5 U.S.C.S. § 552 to apply to the "agency," in this case, the DOJ.

Accordingly, the idea of sub-agency "decentralization" is anathema to Congressional Intent. Th DOJ took its own initiative to invent "decentralization" when it did not have the Congressional authority to do so under the major questions doctrine and other applicable law.

Thus, the DOJ's response dated December 17, 2024, is wholly illegal and not in compliance with federal law.

Therefore, I ask that the DOJ fulfill my request under FOIA law.

If the DOJ does not respond appropriately, I will seek relief from ALL BRANCHES of the federal government. In addition to the relief available in the federal courts, I will seek Executive Branch action from President Trump and from Elon Musk and Vivek Ramaswamy at the Department Of Government Efficiency (D.O.G.E.) beginning in one-month's time. Included in my relief requested shall be the termination of Douglas R. Hibbard, Chief, DOJ Information Staff, and all of Mr. Hibbard's supervisors.

Please be governed accordingly.

/S/ Richard A. Luthmann.

Richard A, Luthmann
4199 Los Altos Court
Naples, FL 34108
Tel: (239) 631-5957
Email: richard.luthmann@protonmail.com

Based on Denial of Fee Waiver          No

## LUTHMANN COMPLAINT EXHIBIT 0026

| | |
|---|---|
| Based on Denial of Expedited Processing | No |
| Requester Item Type 1 | Certification of Identity |
| Requester Items 1 | Birth Certificate and SS Card.pdf |
| Requester Item Type 2 | Certification of Identity |
| Requester Items 2 | Florida Drivers License - Front and Back.pdf |
| Requester Item Type 3 | Supplemental Information |
| Requester Items 3 | West Virginia v. EPA_597 U.S. 697.pdf |

**Requester Contact Information**

| | | | |
|---|---|---|---|
| Salutation | Mr. | Address Type | |
| First Name | Richard | Country | United States |
| Middle Name | A | Address Line 1 | 4199 Los Altos Court |
| Last Name | Luthmann | Address Line 2 | |
| Email Address | richard.luthmann@protonmail.com | City | Naples |
| Organization | | State | Florida |
| Register Number | | Zip/Postal Code | 34109 |
| Phone Number | 2396315957 | | |
| Fax Number | | | |
| Other Information | | | |

**Expedited Processing Information**

| | |
|---|---|
| Expedited Processing Requested? | No |

**LUTHMANN COMPLAINT EXHIBIT 0027**



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*



December 20, 2024

Richard Luthmann

4199 Los Altos Court
Naples , FL  34109
richard.luthmann@protonmail.com

Dear Richard Luthmann :

This is to advise you that the Office of Information Policy of the U.S. Department of Justice received your administrative appeal from the action of the Office of Information Policy regarding Request No. FOIA-2025-01213 on 12/20/2024.

In an attempt to afford each appellant equal and impartial treatment, OIP has adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number A-2025-00574. Please refer to this number in any future communication with OIP regarding this matter. Please note that if you provided an email address or another electronic means of communication with your request or appeal, this Office may respond to your appeal electronically even if you submitted your appeal to this Office via regular U.S. Mail.

We will notify you of the decision on your appeal as soon as we can. If you have any questions about the status of your appeal, you may contact me at 202-514-3642. If you have submitted your appeal through Freedom of Information Act STAR, you may also check the status of your appeal by logging into your account.

Sincerely,

*Priscilla Jones*

Priscilla Jones
Supervisory Administrative Specialist

**LUTHMANN COMPLAINT EXHIBIT 0028**



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

**EXHIBIT**

**K**

Richard Luthmann

Re:    Appeal No. A-2025-00574
Request No. FOIA-2025-01213

richard.luthmann@protonmail.com

**VIA: Online Portal - 4/25/2025**

Dear Richard Luthmann :

You appealed from the action of the Initial Request Staff (IR Staff) of the Office of Information Policy on your Freedom of Information Act (FOIA) request for access to records concerning five named individuals including records relating to the investigation of the 1997 murder of Richard Ortiz. I note that your appeal concerns the IR Staff's determination that it does not maintain such records.

After carefully considering your appeal, I am affirming the IR Staff's action on your request. The IR Staff informed you that it does not maintain records such as those that you described. I have determined that the IR Staff's response was correct.

Based on the type of records that you are seeking, you may wish to make a FOIA request directly to the Executive Office for United States Attorneys (EOUSA) for any records located in the United States Attorney's Office for the Southern District of New York and a FOIA request directly to the Federal Bureau of Investigation through https://www.foia.gov/.

Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of OIP in response to your request.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue

**LUTHMANN COMPLAINT EXHIBIT 0029**

litigation.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll-free at 1-877-684-6448; or facsimile at 202-741-5769.  If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office and speak with the undersigned agency official by calling 202-514-3642.

Sincerely,

Rianna Barrett

Rianna Barrett,
Associate Chief, for Christina Troiani,
Administrative Appeals Staff





POLICE DEPARTMENT
LEGAL BUREAU
F.O.I.L Unit, Room 110C
One Police Plaza
New York, NY 10038

Richard A. Luthmann                                January 7, 2025
4199 Los Altos Court
Naples, FL, 34109                                  FOIL Request #: FOIL-2024-056-35783
                                                   Your File #:

Dear Sir or Madam:

This letter is in response to your request received by this office on December 11, 2024 in which you requested access to certain records under the New York State Freedom of Information Law (FOIL).

☐ Responsive to your request, the following document(s) have been accessed and photocopied:

☐ Redactions have been made to the document(s) in that the release of such information would represent an unwarranted invasion of person privacy and would endanger the life and safety of any person {§87.2 (b) and (f)}.
☒ For the following requested item(s), I must refer you to the appropriate agency/agencies or unit that may be in possession of such documents:
NY Field Office of the FBI
Commissioner of The City of Yonkers PD
US Attorney for Southern District

☐ In total, _____ page(s) have been copied. Please remit payment in the amount of $_____ within thirty (30) days. Failure to do so will result in this file being CLOSED.
☐ The case folder contained records that did not directly pertain to the accident. Such records are not included in the enclosed CD/DVD-ROM.
    ☐ The requested documents are enclosed with this letter.
    ☐ Upon receipt of payment, the requested documents will be mailed.

**PAYMENT PROCEDURE**

| |
|---|
| Send check or money order (no cash) payable to the **"New York City Police Department"** Mail payment to: New York Police Department, F.O.I.L. Unit, Room 110C, One Police Plaza, New York, NY 10038 **Note: Please include the FOIL number on the check or money order** |

**APPEAL PROCEDURE**

| |
|---|
| Should you so desire, you may appeal this decision or any portion thereof. Such an appeal must be made in writing, within thirty (30) days of the date of this letter, and must be forwarded to: Sergeant Jordan S. Mazur, Records Appeals Officer, New York City Police Department, One Police Plaza, Room 1406, New York, NY 10038 or emailed to foilappeals@nypd.org. Please include copies of the FOIL request and this letter with your appeal. |

**LUTHMANN COMPLAINT EXHIBIT 0031**



POLICE DEPARTMENT
LEGAL BUREAU
F.O.I.L Unit, Room 110C
One Police Plaza
New York, NY 10038

Richard A. Luthmann                          December 12, 2024
4199 Los Altos Court
Naples, FL, 34109                            FOIL Request #: FOIL-2024-056-35783
                                             Your File #:  Murder of Richard Ortiz

Dear Sir or Madam:

    This is in response to your request received by this office on December 11, 2024 in which you requested access to certain records under the New York State Freedom of Information Law (FOIL).

    Your request has been assigned to Police Officer Corbett (None) of this office. Before a determination can be rendered, further review is necessary to assess the potential applicability of exemptions set forth in FOIL, and whether the records can be located. I estimate that this review will be completed, and a determination issued within 90 business days of this letter.

    This is not a denial of the records you requested. Should your request be denied in whole or in part, you will then be advised in writing of the reason for any denial, and the name and address of the Records Access Appeals Officer.

                  Very truly yours,

                  Cynthia Acerra
                  Lieutenant
                  New York City Police Department (NYPD)

**LUTHMANN COMPLAINT EXHIBIT 0032**